**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRISTAN TOUZOT,<br><br>        Plaintiff,<br><br>v.<br><br>ROM DEVELOPMENT CORPORATION AND<br>JOHN AND JANE DOES NOS. 1 THROUGH 10,<br><br>        Defendants. | Civil Action No.: 15-6289 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant ROM Development Corporation d/b/a Core Composites ("ROM")'s Motion to Dismiss Plaintiff Tristan Touzot ("Touzot")'s Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF No. 4.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part ROM's Motion to Dismiss.

## BACKGROUND[1]

### A. Factual Background

Touzot was a sales representative for ROM for approximately four years prior to termination in or around May 2015. (ECF No. 6-1, Declaration of Tristan Touzot ("Touzot Decl.")

---

[1] This background is derived from Plaintiff's Complaint and affidavits, which the Court accepts as true for the purposes of this motion only. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

¶ 2). This action arises from compensation allegedly owed to Touzot by ROM. (*Id.*; *see also* ECF No. 1 at 8-18 ("Compl.") ¶ 11.)

ROM is a distributor of various composite materials, including carbon fiber and balsa wood, and is a Rhode Island corporation with its principal place of business in Rhode Island. (*See* Compl. ¶ 1; *see also* ECF No. 5, Declaration of Richard O'Meara[2] ("O'Meara Decl.") ¶¶ 4, 5.) ROM.

Touzot was actively recruited and offered employment by ROM as a sales representative in or about June 2011. (Compl. ¶ 3; Touzot Decl. ¶ 3).) The negotiations for employment took place in Rhode Island. (O'Meara Decl. ¶ 7.) O'Meara drafted an "Employment Proposal for Tristan Touzot" dated June 6, 2011 in Rhode Island, and mailed it to Touzot in New Jersey. (O'Meara Decl. ¶ 7; *see also* ECF No. 401 at 28-34 ("Touzot Employment Proposal").) The Touzot Employment Proposal states that ROM is "an international company that does not believe in a 'territory' system. We sell where we develop relationships and can support the customer better than other suppliers so you basically can cover any account anywhere." (Touzot Employment Proposal at 4.) The Touzot Employment Proposal does not contain a choice of law provision. Separately, on September 14, 2011, Touzot signed an "Employee Non-Compete Agreement" in Rhode Island. (O'Meara Decl. ¶ 7; *see also* ECF No. 1 at 17-18 ("Touzot Non-Compete Agreement") (the Employment Proposal and the Non-Compete Agreement are collectively referred to as "the Agreements").) The Touzot Non-Compete Agreement likewise does not contain a choice of law provision. (*Id.*).

Touzot is a resident of the State of New Jersey, and worked out of his home office in New

---

[2] Richard O'Meara is the president and majority owner of ROM, and is a resident of Rhode Island. (O'Meara Decl. ¶¶ 1, 3.)

Jersey throughout his tenure with ROM.  (Touzot Decl. ¶¶ 4, 14.)  Touzot alleges that he was hired

"specifically" to "work out of [his] New Jersey office with the plan that [he] would be able to

obtain new business for ROM in New Jersey and other areas."  (Touzot Decl. ¶ 4.).  ROM contends

that Touzot requested to be allowed to work out of New Jersey instead of Rhode Island while he

was not travelling, and that ROM accommodated the request but still required Touzot to travel to

Rhode Island on a regular basis.  (O'Meara Decl. ¶ 9.)

      Touzot alleges that ROM regularly conducted business in New Jersey as a supplier,

customer and subcontractor during his term with the company.  (Touzot Decl. ¶ 7.)  Specifically,

Touzot contends that:

- he called on Viking Yacht Company, located in Tuckerton, New Jersey, for purposes of soliciting business.  (Touzot Decl. ¶ 5; *see also* Touzot Employment Proposal at 2 ("I would like you to call on the top 3 marine balsa users in the USA to see if we can sell them BE as a distributor. . . . It would be best to focus on the largest single users such as Viking (NJ) . . . [which will be] tough but we should give it a shot anyway.");

- he delivered products on behalf of ROM to the New Jersey Department of Transportation at a project in Clifton, New Jersey.  (Touzot Decl. ¶ 8);

- ROM has sold its products to New Jersey based contractors hired by the Port Authority of NY & NY for projects at the George Washington Bridge and other locations.  (Touzot Decl. ¶ 9; ECF No. 10-1, Supplemental Declaration of Tristan Touzot ("Touzot Supp. Decl.") ¶¶ 2, 3 and exhibits thereto);

- ROM has done business with Mahogany Company (located in Mays Landing, New Jersey), 3A Composites (formerly based in New Jersey), and Atmos-Tech Industries (located in

Ocean, New Jersey).  (Touzot Decl. ¶¶ 10, 11, 12);

- he attended the Westchester Radio Aero Modelers ("WRAM") Show (one of the country's largest hobby trade organizations) in Secaucus, New Jersey, "with the purpose of soliciting business from both existing and prospective customers in the New York/New Jersey metropolitan area." (Touzot Decl. ¶ 13).

In contrast, ROM denies that Touzot was hired to target the New Jersey market or that ROM conducted business in New Jersey.  (O'Meara Decl. ¶¶ 10, 13.)  In particular, O'Meara contends that:

- although the Touzot Employment Proposal identifies Viking Yacht Company as a potential customer, it was only one among several located across the United States, and ROM has not done any business with Viking.  (O'Meara Decl. ¶ 10);

- in 2010, before ROM hired Touzot, ROM sold a fabric impregnator (a machine used to fit epoxy resin into carbon fiber) to the NJDOT.  Touzot's only contact with NJDOT was dropping off a 5-gallon pail of epoxy to an NJDOT employee's home.  (ECF No. 13, Supplemental Declaration of Richard O'Meara ("O'Meara Supp. Decl.") ¶ 2);

- ROM made no sales to a New Jersey-based contractor hired by the Port Authority of NY & NJ in connection with work on the George Washington Bridge or other locations. (O'Meara Supp. Decl. ¶ 3);

- 3A based its operations out of New Jersey prior to Touzot's employment, but 3A operated out of North Carolina during the term of Touzot's employment.  (O'Meara Supp. Decl. ¶ 4);

- Atmos-Tech Industries submitted an inquiry via ROM's website and Touzot followed up

4

on this web-based inquiry, but never made a sale to Atmos-Tech Industries.  (O'Meara Supp. Decl. ¶ 5);

- Touzot's attendance at the WRAM trade show in Secaucus was strictly to entertain one of ROM's Michigan-based customers, yet ROM does not have any record of Touzot's attendance at the show.  (O'Meara Supp. Decl. ¶ 6);

- ROM had only limited sales to Mahogany Company and was never hired as a subcontractor by them.  (O'Meara Supp. Decl. ¶ 7);

- ROM's business in New Jersey during the time it employed Touzot never accounted for more than 0.2% of its total revenue.  (O'Meara Supp. Decl. ¶ 8).

**B.  Procedural Background**

Touzot commenced this action on July 15, 2015 by filing a Complaint in the Superior Court of New Jersey, Chancery Division, Bergen County. (*See* ECF No. 1.)  On August 19, 2015, ROM removed the action to this Court pursuant to 28 U.S.C. § 1441.[3]  (*Id.*)  On September 9, 2015, ROM filed the instant Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2).  (ECF No. 4-1 ("ROM Mov. Br.").)[4]  On September 21, 2015, Touzot filed opposition (ECF No. 6 ("Pl. Opp. Br.")), on September 28, 2015, ROM filed a reply (ECF No. 7 ("ROM Reply Br.")),[5] and on October 4, 2015, Touzot filed a sur-reply (ECF No. 10 ("Pl. Sur-Reply Br.")). The motion is now ripe for resolution.

---

[3] The Court finds, and the parties do not dispute, that the Court has jurisdiction over the matter under 28 U.S.C. § 1332.
[4] The Court notes that ROM filed a "corrected" declaration of Richard O'Meara in support of their motion on September 16, 2015.  (ECF No. 5.)
[5] The Court notes that ROM filed a "corrected" declaration of Richard O'Meara in support of their reply brief on October 6, 2015.  (ECF No. 13.)

## LEGAL STANDARD

Once a defendant files a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the "plaintiff must prove by affidavits or other competent evidence that jurisdiction is proper." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal citations omitted). Where, as here, the district court does not hold an evidentiary hearing, a plaintiff need only establish a "'prima facie case of personal jurisdiction,'" *Haffen v. Butler Specialities, Inc. et al.*, No. 10-2833, 2011 U.S. Dist. LEXIS 21581, at *7 (D.N.J. March 3, 2011) (quoting *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)), and the court "is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Metcalfe*, 566 F.3d at 330 (internal citations omitted). Additionally, "[i]f the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." *Haffen*, 2011 U.S. Dist. LEXIS 21581 at *7 (quoting 4 Wright & Miller, Federal Practice and Procedure: Civil 3d 1067.6 (3d ed. 2002)). The plaintiff, however, retains "'the burden of demonstrating that the defendants' contacts with the forum state are sufficient to give the court in personam jurisdiction.' These contacts must be shown 'with reasonable particularity.'" *Wellness Publ'g v. Barefoot*, 128 Fed. App'x 266, 268 (3d Cir. 2005) (brackets and internal citations omitted).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales*, 384 F.3d at 96. "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Id.* (citing N.J. Ct. R. 4:4-4(c)). A district court sitting in New Jersey may therefore

6

exercise personal jurisdiction over a non-resident defendant if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Henry Heide, Inc. v. WRH Prods. Co., Inc.*, 766 F.2d 105, 108 (3d Cir. 1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

"Minimum contacts can be analyzed in the context of general jurisdiction or specific jurisdiction." *Metcalfe*, 566 F.3d at 334. General jurisdiction results from, among other things, "systematic and continuous" contact between a non-resident defendant and the forum state. *Spuglio v. Cabaret Lounge*, 344 F. App'x 724, 725 (3d Cir. 2009). "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Miller Yacht Sales*, 384 F.3d at 96 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

### A. General Jurisdiction

"'[G]eneral jurisdiction exists when a defendant has maintained systematic and continuous contacts with the forum state.' This is a fact-specific inquiry, and the 'nonresident's contacts to the forum must be continuous and substantial' to support the exercise of general jurisdiction." *Arpaio v. Dupre*, 527 F. App'x 108, 113 (3d Cir. 2013) (internal citations omitted). In recent years, the United States Supreme Court has offered guidance on the level of "continuous and substantial" contacts that might justify the exercise of general or "all purpose" jurisdiction.

In *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846 (2011), the Court addressed a situation in which the foreign subsidiaries of an American corporation challenged a North Carolina court's exercise of personal jurisdiction over them. A unanimous Court discussed

the parameters of general jurisdiction, writing that "[f]or an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 2853-54.  The Court reiterated the principal that "[a] corporation's 'continuous activity of some sorts within a state' . . . 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.* at 2856 (quoting *Int'l Shoe Co.*, 326 U.S. at 318).   The Court further noted that neither regular purchases of goods from a state nor the sales of goods to a state were sufficient, in themselves, to subject an entity to general jurisdiction on claims unrelated to the sales/purchases. *Id.* at 2856-57 (citing *Helicopteros Nacionales De Colombia v. Hall*, 466 U.S. 408, 418 (1984)). As the Defendant subsidiaries in Goodyear had only "attenuated" contacts with the state (*i.e.*, their products were sold into the state via intermediaries)[6] and were "in no sense at home in North Carolina," the Court found that the subsidiaries were not subject to general jurisdiction in North Carolina's courts. *Id.* at 2857.

The Supreme Court confirmed the narrow applicability of the general jurisdiction doctrine in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  In *Daimler*, the Court rejected a formulation of the doctrine that would "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business,'" characterizing that broad definition as "unacceptably grasping." *Id.* at 761 (internal citation omitted).   The Court observed that "the inquiry under Goodyear is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is

---

[6] The *Goodyear* Court also specified that while the "[f]low of a manufacturer's products into a forum . . . may bolster an affiliation germane to *specific* jurisdiction . . . ties serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has *general* jurisdiction over a defendant." *Id.* at 2855 (emphases in original).

whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Id.* at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). The Court also clarified that "the general jurisdiction inquiry does not 'focus solely on the magnitude of the defendant's in-state contacts.' General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide. A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States." *Id.* at 762, n.20. The Court ultimately found that there was "no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." *Id.* at 760, 761-62.

### B. Specific Jurisdiction

"Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir.2001) (quoting *Rudzewicz*, 471 U.S. at 472). In other words, specific jurisdiction exists where the "cause of action arises out of [t]he defendant's forum-related activities, such that the defendant should reasonably anticipate being haled into court in that forum." *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008) (internal citations and quotations omitted).

Three elements must be met to establish specific jurisdiction. *HS Real Co., LLC et al. v. Sher*, 526 F. App'x 203, 206 (3d Cir. 2013). First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum. *Id.* Second, "plaintiffs' claims must arise out of or relate to at least one of the contacts with the forum." *Id.* (internal citations and

quotations omitted). Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

Because the existence of specific jurisdiction depends on a link between the defendant's activity and the resulting harm, a specific jurisdiction analysis is necessarily claim specific. *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) ("Such a determination is claim specific because a conclusion that the District Court has personal jurisdiction over one of the defendants as to a particular claim asserted by [plaintiff] does not necessarily mean that it has personal jurisdiction over that same defendant as to [plaintiff]'s other claims.").

## ANALYSIS

ROM argues that the Court lacks specific and general jurisdiction over it on any of Touzot's claims because ROM lacks sufficient minimum contacts to satisfy the requirements of due process. With respect to specific jurisdiction, ROM points to the fact that the employment contract was negotiated in Rhode Island and then sent to Touzot in New Jersey, that monies paid to Touzot by ROM (both past and potentially as a result of this lawsuit) would be sent from Rhode Island, and that Touzot was required to travel to Rhode Island as part of his job responsibilities despite being permitted to work from New Jersey. (ROM Mov. Br. at 6-10 (analogizing *Bray v. Middleberg Commc'ns, Inc.*, No. A-2529-12T1, 2014 WL 340134 (N.J. Super. Ct. App. Div. Jan. 31, 2014); *see also* ROM Reply Br. at 5-12.) As for general jurisdiction, ROM argues that it is not "essentially at home" in New Jersey, as evidenced in part by the fact that it is a Rhode Island corporation with its principal place of business in Rhode Island; that it owns no real property, has no bank accounts,

10

and has never filed a tax return in New Jersey; and that it currently has no customers or suppliers in New Jersey.  (ROM Mov. Br. at 10-14; *see also* ROM Reply Br. at 1-5.)  Alternatively, ROM contends that even if there were sufficient minimum contacts, this Court's exercise of jurisdiction would offend traditional notions of fair play and substantial justice because all of ROM's documents and witnesses are located in Rhode Island, and Rhode Island law will most likely apply. (ROM Mov. Br. at 14-16.)

In opposition, Touzot argues ROM has created specific and general personal jurisdiction by contracting with a New Jersey resident who pursued ROM's objectives in New Jersey for over four years.  Specifically, Touzot contends that general jurisdiction exists because ROM conducted business with New Jersey entities before and after Touzot's employment.  (Pl. Opp. Br. at 4.) Additionally, Touzot claims that specific jurisdiction exists based on Touzot's employment, and points to the fact that the Employment Proposal specifically references soliciting a New Jersey company, that Touzot worked in New Jersey while employed by ROM (and rarely travelled to Rhode Island), and that the Non-Compete implicates Touzot's ability to work in New Jersey.  (*Id.* at 5.)   Additionally, Touzot claims that the New Jersey Sales Representatives Rights Act (NJSRRA), N.J.S.A. 2A:61a-1, et seq., provides a jurisdictional hook.  (*Id.*)  Furthermore, Touzot attempts to distinguish the facts in *Bray* and suggests instead that the decision in *Vedicsoft Solutions, Inc. v. Millennium Consulting, Inc.*, No. A-2367-09T3, 2010 WL 4137424 (N.J. Super. Ct. App. Div. Oct. 22, 2010) is more on point.  (*Id.* at 6-8.)  Finally, Touzot contends that ROM has failed to meet its burden to present a "compelling case" that jurisdiction is otherwise unreasonable and argues that New Jersey has a strong interest in hearing this case.  (*Id.* at 8-9.)

Here, Touzot's Complaint alleges six causes of action: declaratory judgment that the Non-

Compete Agreement is subject to rescission or reformation (Count One); breach of contract with respect to the Employment Proposal (Count Two); interference with prospective economic advantage arising out of ROM's alleged communications with customers regarding Touzot's termination (Count Three); breach of the covenant of good faith and fair dealing with respect to the Employment Proposal (Count Four); unjust enrichment arising out of monies owed under the Employment Proposal (Count Five); and violation of the New Jersey Sales Representatives' Rights Act (N.J.S.A. 2A:61A-1, *et seq.*) pertaining to "commissions due and owing" under the Employment Proposal (Count Six).

In other words, Counts One, Two, Four, Five, and Six are contract-based, while Count Three sounds in tort. The Court discusses the contract-based and tort-based claims separately, *Remick*, 238 F.3d at 255, mindful that it "is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Metcalfe*, 566 F.3d at 330 (internal citations omitted).

### A. ROM Engaged In Sufficient Contacts With New Jersey For The Exercise Of Specific Jurisdiction Over the Contract-Based Claims

1. Touzot Has Established a Sufficient Relationship Between the Agreements and New Jersey

In determining jurisdiction over a breach of contract claim, [the Court] must consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v*, 238 F.3d at 256 (citations omitted).

The fact that the Agreements were negotiated in Rhode Island and then sent to Touzot in New Jersey admittedly weighs against a finding of jurisdiction. However, the Court finds it highly significant that the Employment Proposal specifically references calling on the Viking Yacht

12

Company, located in Tuckerton, New Jersey, for purposes of soliciting business. (Touzot Employment Proposal at 2 ("I would like you to call on the top 3 marine balsa users in the USA to see if we can sell them BE as a distributor. . . . It would be best to focus on the largest single users such as Viking (NJ) . . . [which will be] tough but we should give it a shot anyway.") Plus, Touzot specifically alleges that he actually called on Viking for the purpose of soliciting business for ROM.   The Court finds this significant, even if it ultimately did not yield any business. Furthermore, Touzot worked almost exclusively out of his home in New Jersey on behalf of ROM, and rarely conducted ROM business in Rhode Island.   Additionally, monies earned by Touzot during his employment were sent by ROM to him in New Jersey, and the terms of the Non-Compete, as written, potentially affect Touzot's ability to earn a living in New Jersey going forward.

The case primarily relied on by ROM is illustrative.   In *Bray v. Middleberg Commc'ns, Inc.*, the plaintiff, a New Jersey resident, filed a complaint against his former employer, a New York company with a single office in New York City. No. A-2529-12T1, 2014 WL 340134, at *1 (N.J. Super. Ct. App. Div. Jan. 31, 2014).   The Appellate Division affirmed the trial court's decision that New Jersey courts lacked personal jurisdiction over the former employer. *Id.*   But *Bray* is distinguishable in certain key respects.   First, the employment agreement specifically contained a New York choice-of-law provision. *Id.* at *5. Here, the Touzot Employment Proposal and Non-Compete Agreements are silent.   Second, in *Bray*, "the employment agreement did not make any reference to the performance of services in New Jersey." *Id.* at *5.   In contrast, the Touzot Employment Proposal specifically references soliciting business in New Jersey.   Even if the ultimate contact was limited, the Court finds this explicit reference significant.   Third, in *Bray*,

13

the plaintiff "worked primarily out of [the former employer's] New York office." *Id.*   The Appellate Division emphasized that although he was "permitted to work from his home in New Jersey from time to time, . . . this appears to have been an accommodation, rather than a purposeful effort on [the former employer's] part to conduct business in New Jersey." *Id.*   Here, Touzot worked almost exclusively out of his home in New Jersey, and rarely conducted business out of Rhode Island.   Although permitting Touzot to work from home may have likewise been an "accommodation" on the part of ROM, the Court interprets this in conjunction with the Employment Proposal's specific reference to soliciting business in New Jersey.

In sum, the Court finds that ROM had purposeful contacts with New Jersey that were not random, fortuitous, or attenuated, nor were they solely the result of Touzot's unilateral activities. Thus, the Court is satisfied that Touzot has established a sufficient relationship between the Agreements and New Jersey.

2.   The Exercise of Jurisdiction Over ROM Does Not Offend Traditional Notions of Fair Play and Substantial Justice

Once minimum contacts have been established, the Court must ensure that its jurisdiction "comport[s] with 'fair play and substantial justice.'" *Rudzewicz*, 471 U.S. at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 320).   Considerations include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 476-77 (internal quotation marks omitted).   In order to defeat jurisdiction that is otherwise proper, these factors "must present a compelling case . . . render[ing] jurisdiction unreasonable." *Id.* at 477.   However, "[a] weak minimum contacts showing requires greater

14

emphasis on reasonableness." *In re Nazi Era Cases Against German Defendants Litig.*, 153 F. App'x 819, 825 (3d Cir. 2005) (citation omitted).

The Court does not find that the factors present a "compelling case" that jurisdiction is unreasonable. Although it is undoubtedly a burden on ROM to litigate this matter in New Jersey as opposed to Rhode Island, ROM has not shown that it will be unable to present any evidence in New Jersey that might be available in Rhode Island. *See Vedicsoft Solutions, Inc. v. Millennium Consulting, Inc.*, No. A-2367-09T3, 2010 WL 4137424, at *5 (N.J. Super. Ct. App. Div. Oct. 22, 2010). It is not unreasonable to expect ROM to litigate this matter in New Jersey when it specifically authorized Touzot to work out of New Jersey and suggested that he call on a specific, potential client in the state. At the same time, New Jersey has a clear interest in adjudicating this dispute in that it involves one of its citizens and his ability to collect alleged monies owed and the scope of future employment. Thus, the Court does not agree that jurisdiction in New Jersey offends traditional notions of fair play and substantial justice. Accordingly, the Court concludes that it has jurisdiction over Counts One, Two, Four, Five, and Six.

### B. The Court Does Not Have Personal Jurisdiction Over ROM With Respect to the Tort-Based Claim (Count Three)

Conversely, the Court finds that it does not have personal jurisdiction over ROM with respect to the claim for interference with prospective economic advantage arising out of ROM's alleged communications with customers regarding Touzot's termination (Count Three), either under a theory of specific or general jurisdiction.

1. The Complaint Fails to Allege Facts Giving Rise to Specific Jurisdiction Over the Tort Claim

The New Jersey Supreme Court has stated that "[a]n intentional act calculated to create an

15

actionable event in a forum state will give that state jurisdiction over the actor.'" *Blakely v. Cont'l Airlines, Inc.*, 164 N.J. 38, 67 (2000) (quoting *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 138 N.J. 106, 126 (1994)); *see also Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 532 (D.N.J. 2013) ("The baseline inquiry for Plaintiffs' tort claims is but-for-causation.").

Touzout did not oppose this portion of ROM's motion, but even construing the Complaint in a light most favorable to him, it is clear that the Court lacks specific jurisdiction over the tort-based claim. In the Complaint, Touzot alleges that "[s]ince his termination without cause, ROM and its representatives have contacted a number of Touzot's customers to misrepresent that he is broadly prohibited from conducting any type of business with them . . . ." (Compl. ¶ 12.) In Count Three, Touzot contends that "ROM's wrongful actions in contacting customers and providing them with false, misleading and defamatory information regarding Touzot have interfered with his ability to do business with such customers and others in the industry." (Compl. ¶ 20.)

In short, Touzot has not specifically alleged that ROM contacted any clients based in New Jersey. Unlike the contract-based claims, the tort-based claim arises solely from ROM's actions post-termination. Accordingly, "there are no specific alleged actionable events in New Jersey that would support the exercise of specific jurisdiction" over Count Three. *Bray*, 2014 WL 340134, at *6 (dismissing identical theory of recovery for lack of allegations specifically relating to New Jersey).

2.   Touzout Has Not Established That This Court Has General Jurisdiction Over ROM

Similarly, the Court finds that Touzot has not established general jurisdiction over ROM for Count Three. As noted, the inquiry for general jurisdiction is "not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is

16

whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851). Furthermore, "[w]here [a] plaintiff cannot prove sufficient contacts to establish specific jurisdiction, it makes the existence of continuous and systematic activity [necessary for general jurisdiction] highly unlikely." *Owens v. Feigin*, No. A-4367-12T1, 2014 WL 8516074, at *4 (N.J. Super. Ct. App. Div. Apr. 14, 2015).

It is undisputed that ROM is a Rhode Island company with its principal place of business in Rhode Island and that Mr. O'Meara, ROM's sole officer and director, is a Rhode Island resident. (O'Meara Decl. ¶¶ 3, 4). ROM owns no real or personal property, has no bank accounts, and has never filed a tax return in New Jersey. (*Id.* ¶ 6.) Admittedly, there are significant factual disputes over the extent and timing of ROM's contacts with New Jersey. But even construing them in favor of Touzot, they are insufficient to establish general personal jurisdiction. Paramount to the Court is the fact that during the time Touzot was employed by ROM,[7] ROM's business in New Jersey never accounted for more than one-fifth of one percent (0.2%) of its total revenue. (O'Meara Supp. Decl. ¶ 8.) This low percentage of revenue derived from New Jersey is strong evidence that ROM cannot be considered "at home" in New Jersey for purposes of establishing general jurisdiction, and Touzot does not dispute this. *See, e.g., Kimball v. Countrywide Merch. Servs.*, No. 04-3466, 2005 WL 318752, at *3 (E.D. Pa. Feb. 8, 2005) (declining to exercise general jurisdiction over defendant where defendant's in-forum "sales reflect[ed] less than one percent of

---

[7] "In general jurisdiction cases, district courts should examine a defendant's contacts with the forum state over a period that is reasonable under the circumstances—up to and including the date the suit was filed—to assess whether they satisfy the 'continuous and systematic' standard." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569-70 (2d Cir. 1996) (cited approvingly in the Third Circuit by *McMullen v. European Adoption Consultants, Inc.*, 109 F. Supp. 2d 417, 419 (W.D. Pa. 2000)).

its annual sales"). Accordingly, because ROM lacks continuous and systematic contacts with New Jersey, the Court cannot constitutionally assert general personal jurisdiction over it for Count Three.

## **CONCLUSION**

For the reasons above, the Court grants in part and denies in part ROM's Motion to Dismiss. (ECF No. 4.) An appropriate Order accompanies this Opinion.

DATED: October 15, 2015

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE